CAROLINE WILLEY & others *vs.* BENJAMIN L. THOMPSON, Executor.

The firm of T. & W. were also partners in the firm of P. & Co.: The members of the firm of P. & Co. were incorporated by the name of the Wareham Iron Company, but gave no notice of the dissolution of their partnership, and continued to do business under the name of P. & Co., and became largely indebted to G.: Said company failed, and made an assignment of all their property to T. & W., in trust, first, to pay them, in full, all that the company owed them, and to indemnify them, in full, against all their liabilities for the company, and secondly, to appropriate the residue to the payment, *pro ratâ,* of the other creditors of the company, who should execute the assignment; and this assignment was executed by most of the creditors: W. afterwards died, leaving a will in which T. was appointed one of his executors: Subsequently, G., who had not become a party to said assignment, sued T., as surviving partner of W., for the debt due from said company to G., and recovered judgment, on the ground that he had no notice, when the debt was contracted, of the dissolution of the firm of P. & Co., of which T. & W. were members: T. paid $29,000 in satisfaction of said judgment, and presented to the judge of probate a claim against the estate of W., his testator, of one half of the sum so paid by him to G.: This claim was disputed by the widow and heirs of W.; on the hearing, it appeared that T., when he so paid G., had in his hands, as surviving assignee of said company, property sufficient to pay all that the company owed T. & W., and also to indemnify him against G.'s judgment. *Held,* that T.'s claim could not legally be allowed; and that he should have charged the amount thereof to the trust fund under the assignment, although he omitted so to do, and charged it to the partnership fund, for the purpose of quieting the company's creditors, who were not preferred by the assignment, and from an apprehension that, if he did not, they might attempt, as G. had, to recover from him their full demands against the company.

When an executor or administrator, pursuant to the Rev. Sts. *c.* 66, presents to the judge of probate an account between himself and the deceased, and claims a balance as a debt due to him from the deceased, which claim, being disputed, is examined and allowed by the judge, without being submitted to an arbitrator, and parties interested in the deceased's estate appeal to the supreme judicial court, the appeal opens the whole account, and the appellate court has authority, if neither party requests to have the claim submitted to a jury, to decide on the claim, and to decree that there is a balance due from the executor to the deceased's estate.

SHAW, C. J. This case was several times before the court, and it is difficult to give a detailed report of it. It will prob-

28 *

ably be sufficient to state enough of the case to show the bearing of the points decided.

The appellants are the widow and children, heirs at law and legatees of Newton Willey; and they appeal against the allowance of the account of Benjamin Thompson, executor. Thompson was in partnership with Willey, till the time of the decease of the latter, and acted as one of the executors of his will. The principal question arose in respect to one item, charged by the executor in his private and individual account, which, being allowed, rendered the estate of Willey insolvent, but if not allowed, the estate was solvent. The item was for $14,500, being one half of the amount paid to satisfy a judgment recovered by Nathaniel Goddard, against Thompson, as surviving partner of the firm of Thompson & Willey, on a suit commenced after Willey's decease. See 16 Pick. 412.

That judgment was recovered under these circumstances: Thompson & Willey, as partners, had formerly become interested in an iron manufactory at Wareham, conducted under the name of I. & J. Pratt & Co., and which was subsequently incorporated. But though they had been incorporated under the name of the Wareham Iron Company, they still carried on their business in the name of I. & J. Pratt & Co., and gave no notice of the dissolution of that partnership. Goddard became a creditor to a large amount, taking notes in the name of I. & J. Pratt & Co., without notice of the dissolution of that partnership. An action was brought by him, with a view of charging Thompson & Willey as partners, and a judgment was recovered for a sum exceeding $30,000, which was compounded, and $29,000 were paid by Thompson, in full satisfaction. He claimed the right to charge one half of the sum, thus paid, to the estate of his deceased partner. On the contrary, it was insisted that he had no such right, because the Wareham Iron Company, when they stopped payment, made an assignment of a large amount of property to Thompson & Willey, when it was not unlawful to prefer creditors, in trust, to pay expenses and to pay in full all debts due to Thompson & Willey, all sums for which they should be held liable

as indorsers or sureties, and for all other liabilities which they might be under for the iron company, and the residue to be paid to the general creditors. Under this assignment Thompson received a large amount of property, and charged against it all the debts due to Thompson & Willey, all notes paid by them as indorsers, and compounded with the general creditors, at forty per cent. These facts are condensed from the accounts, and the reports of an auditor, to whom the accounts had been referred in the probate court.

Upon the case thus stated, the court are of opinion, that as Thompson & Willey were copartners in the agreement by which they entered into the concern of I. & J. Pratt & Co., the subsequent judgment recovered against Thompson, as surviving partner of that firm, was conclusive evidence that Willey's estate was equally liable with Thompson; the judgment having established the fact, that the debt to Goddard was contracted in the name of that firm when Willey was liable as a partner. And though Willey had deceased when the action was brought, and was not a party to the suit, his estate was bound both in equity and law.

The object of the assignment made by the Wareham Iron Company, the real debtors to Goddard, was, to treat Thompson & Willey as preferred creditors, and to pay and indemnify them, in full, against all liabilities ; whether any particular liabilities were in their contemplation or not, or whether they then knew of their existence or not. The legal liability for the debts of said corporation, under which they stood to Goddard, as partners in the old firm of I. & J. Pratt & Co., in which name the corporation continued to transact their business, comes within this provision, and was covered by this trust assignment. Thompson & Willey were put in the list of preferred creditors, for balance, &c. $64,000, and as indorsers, and for *other liabilities*, generally, without limitation.

It appears by the accounts, that Thompson received from the trust fund enough to pay Goddard's judgment, in addition to all the other preferred claims of Thompson & Willey, and all others, and to leave a considerable surplus to be distributed

amongst the general creditors, who could only come in, after all the preferred creditors were paid.

The sum paid to Goddard, in satisfaction of his judgment, was, therefore, a proper charge upon the trust fund ; and it is not material whether, at the moment when Thompson was called upon to pay that judgment, he had money in hand, from the trust assignment, sufficient to discharge it; (though an examination of the accounts might show that he had ;) but, as he had available property, with a full power to use it, and convert it into money, his right to charge it to the partnership fund of Thompson & Willey would not depend upon the accident of his being, or not being, at the moment, cash in hand from the trust fund to pay it.

The consequence is, that the money paid on this judgment of Goddard ought to have been charged, and, in contemplation of law, was charged, to the trust fund arising from the assignment ; because, as Thompson was the sole manager of both funds, and kept all the accounts in any manner which he might think most convenient to himself, the fact of his debiting it to either fund could not affect the liability of the fund to which it was properly chargeable. He might *enter* it, in the books, to one of these accounts ; as indicating his election, when he had any election. But if it properly and legally belonged to another, it must be considered as actually charged to the account to which it properly belonged ; because he must be legally considered to have done, in this respect, what by law he ought to have done, and that such entry was a mere mistake, to be corrected according to the right.

If, after paying the preferred creditors and the charges, there was no surplus, then Thompson, as surviving assignee, had no authority to pay any of the general creditors; and any such payment must be considered as made in his own wrong, or rather, at his own risk, and for his own account.

It is this consideration which has induced the court to consider it immaterial whether the claims of Thompson for commissions, and generally for services and expenses, as charged to the account of the trust assignment, were reason

able and admissible, or not. In some respects it would have been very material, and the court would have felt bound to give an opinion upon that question. The assignment having provided that the expenses and charges of executing the powers and trusts arising out of the assignment should be paid in full, as well as certain preferred claims, if the fund had proved insufficient to pay the whole of the preferred claims and these expenses in addition, then the estate of Willey would have had a direct interest in determining whether the commissions charged were the just and legal expenses contemplated by the assignment, or otherwise. But as the fund did prove sufficient to pay all the preferred debts, including the debt of Goddard, together with the full amount of commissions *as claimed* by Thompson, and yet leave a surplus, the question of the reasonableness and legality of these commissions ceases to be material, in any view we take of the interests of the parties in this case.

Then it is contended that, although Thompson might and ought to have charged the amount of the Goddard judgment to the trust fund under the assignment, yet that he, together with the estate of his deceased partner, was in danger of being made liable for the whole of the unpreferred debts of the Wareham Iron Co., upon the same ground of partnership liability on which Goddard recovered ; and that, as a matter of precaution, it was wise to withdraw that claim from that account, and take the payment upon the partnership account, in order to induce the general creditors the more readily to acquiesce in a settlement under the assignment ; a settlement which they would be more disposed to make, if they could receive the amount, or about the amount, of dividend which had been estimated, without reference to the Goddard judgment as a preferred claim ; and which they would not be likely to do, if that debt was so charged as a preferred claim. And it was further insisted, that a compromise on this basis, by which these general creditors were quieted, and deterred from proceeding, as Goddard had done, to endeavor to charge Thompson & Willey, as partners, was equally beneficial to

Thompson and the estate of his late partner, Willey; and that, in the exercise of his discretionary authority as surviving partner, he had a right to charge the whole of the Goddard judgment on the partnership fund of Thompson & Willey; and if he thought it was a beneficial settlement, the exercise of his discretion, in that respect, was decisive.

The court are of opinion that he had no such power. His authority as surviving partner was, to pay the debts of the firm, and those only; and he had no authority to speculate upon the chance of escaping some possible liability, by charging the firm with a debt for which it appears that another ample fund was provided, and in his power.

Besides; suppose this was done with that view, and that Thompson had a real and sincere apprehension that, as surviving partner, he might be chargeable with a large amount of the old debts of the corporation, contracted under the name of I. & J. Pratt & Co., and that, expressly to save himself from that liability, he had agreed to withdraw the same from the fund under the assignment, and charge it to the firm of Thompson & Willey — facts which do not appear — yet he could not, *in equity*, thus charge the partnership fund. Although he and the estate of his deceased partner stood equally liable to the apprehended claim, yet that claim had not been ascertained by any judicial proceeding. On the contrary, the claims of the creditors of the iron company were rendered extremely doubtful, by their having become parties to the assignment, and thereby admitting themselves creditors of the corporation. And suppose the apprehension of liability to so large a claim was a strong motive to some compromise, the parties did not stand upon an equal footing. By making that settlement, and charging that amount to the partnership fund, the whole of the interest of Willey in that fund was absorbed, and his estate could receive no countervailing benefit. But Thompson was enabled to settle the whole concern, without loss; and his share of the charge to the partnership estate of Thompson & Willey was more than counterbalanced by the amount of his commissions under the assignment, in which Willey, after his decease, could not share.

The strong ground however is, that the surviving partner, through a mere apprehension of liability, had no right to charge the fund with a sum which would absorb the whole of the deceased partner's interest in that fund. It appears to us to stand upon the same footing as if Thompson, without any reference to the assignment, and to the claims and proceedings under it, in consequence of an apprehension that other creditors of the Wareham Iron Company might claim of the old firm of I. & J. Pratt & Co., on the ground of not having given notice of the dissolution, though no judgment was obtained, nor even any suit brought, had agreed to buy his peace by the payment of $29,000 cash. Could he, as surviving partner, have paid such sum in cash, and charged the firm of Thompson & Willey with it, especially when such charge would absorb the whole interest of the deceased partner in that fund ? We think it would be extending the power of a surviving partner beyond all bounds of reason and justice. It does not appear that Willey had any other estate to be protected from such charge, by such compromise, except his interest in that partnership. But if he had, Thompson had no authority, as surviving partner, to purchase indemnity for it, by the application of his whole interest in that partnership fund.

But if Thompson could not, for this purpose alone, have paid $29,000 in cash, to purchase such indemnity, without reference to any other consideration, and when he must himself have borne one half of the expense of such compromise, without reference to any corresponding advantage, *a fortiori*, can he not do it, when, as a part of the same general compromise, he obtained countervailing advantages, fully equal to the sacrifice made by such compromise, but a countervailing advantage in which the estate of his deceased partner does not participate.

There are other parts of the executor's account which must be reformed, and it is to be sent to an auditor to be restated.

Upon the coming in of the auditor's report, the following opinion was delivered by

SHAW, C. J.  The effect of the former decision, disallowing a large charge made by the executor against the estate of his testator, for a balance of account, was to change the balance, and to show that the executor was a debtor to the estate. The case was again referred to the auditor, and on his report, it appearing that there is a balance chargeable to the executor, it is objected that, on this appeal, it is not within the jurisdiction of the court to decree that there is a balance due by the executor, but that the matter must be remanded to the probate court, to enable the party who claims so to charge him to begin *de novo*.  This is an important question, as it affects the jurisdiction and practice of the probate court, and of this court as the supreme court of probate.  The question is, whether, when an executor presents his probate account to the judge for allowance, and there claims a debt as due from his testator to himself personally, or, when persons interested require him to charge himself with a debt due from him personally to his testator, it does not open the whole account between the testator and executor, on bo*h sides, and give the court jurisdiction of the whole subject to decree upon the account according to the result.  The court are of opinion that where, as in the present case, such claim is for a balance of account, it does.  Whether it would where the claim is on a single specific demand, this case does not require us to give an opinion.

The case where the executor has a demand against his testator is provided for fully by the Rev. Sts. c. 66, §§ 18, 19. He, in the first place, charges it as an item in his account, of which notice must be given, and if disputed by any one having a right to dispute it, then it may be submitted to arbitration.  It was said, in the argument of this case, that it could not be brought before this court on the appeal, unless it appeared that an arbitration had been tendered and refused. But we think there is no ground for this argument.  It is no more the duty of one to offer arbitration than the other.  It is

an authority to the judge, if the parties agree. But § 19 was inserted as a new provision, to supply a defect which formerly existed, in case the parties did not agree to arbitration. It provides that the judge shall decide it, in the first instance, upon the evidence ; saving to each party a right of appeal. and providing for a trial by jury, in certain cases, in the appellate court. If it is not required by either party to be tried by jury, nor so directed by the court, it is to be tried here, as below, on the evidence, by the court.

In such case the executor acts *suo jure,* and against the interest of the creditors, legatees, heirs and all persons interested in the estate ; whereas, in all other cases, he is trustee for them, and is supposed to be the proper party to defend the estate against groundless and unjust demands. It follows that, in case of his own claim, any party adversely interested may appear and oppose, and in like manner appeal.

So, under another head of authority, the probate court has jurisdiction and power to require an executor or administrator to charge himself with a debt due from himself to the deceased ; the same being by law assets in his hands. Every executor and administrator, by taking that trust, subjects himself to the duty of accounting for such debt, and is bound to account on oath, if required, and to answer all pertinent questions which may be put to him touching such debt. *Sigourney* v. *Wetherell,* 6 Met. 553. If such a demand of an executor against his testator, or of an heir against the executor, results from a course of dealing, or involves mutual debts and credits, the balance only is the actual debt, and the judge must examine and pass upon the whole account on both sides, in order to ascertain that balance ; and, of course, all the items on both sides are put in issue. *Bigelow* v. *Folger,* 2 Met. 255. This results from the obvious necessity that all mutual demands must be embraced, because the settlement is in its nature final.

It seems, therefore, that upon a claim by either party, all offsets and mutual demands are in issue, and however the court may adjudge the balance, all the mutual claims are em-

braced in the adjudication. When, therefore, an appeal is taken and entered in this court, the whole case is brought before this court by the appeal. The reason why the widow and heirs took the appeal in the present case, is alleged to be, because they thought the item allowed, which rendered the estate insolvent, ought not to have been allowed. When that is so found in their favor, it seems to us that they are not only entitled to have the claim of the executor disallowed, but to have the whole account reformed and set right on the appeal, and to have a decree accordingly. The authority of the appellate court is, to revise the whole decree, and to pass such decree as the court below might and should have rendered.

Had the executor made no claim against his testator, but simply omitted to credit items which the widow and heirs believed should be credited, the proper course would have been for them to file a petition with the judge of probate, praying that he might be so required to charge himself. That would give the court jurisdiction; and whichever way it might be decided, either party would have a right to appeal. But when the executor made a large personal claim for a balance, and the widow and heirs were called in to answer it, this authorized them to put forth any counter claims, to be used as offsets, or claims upon the executor to charge himself, and thereupon the court of probate had jurisdiction of their mutual claims on both sides, to decree for or against the executor, according to the result. And to the extent to which that court had original jurisdiction, this court has appellate jurisdiction.

It is to be considered that this is not a claim made by the widow and heirs, for any thing due from the executor to them. It is a claim, upon the settlement of his probate account, that he shall charge himself with debts due to his testator, as assets to be accounted for; and to be applied, in due course of administration, to the payment of debts and legacies to the parties entitled.

*Field & B. Sumner,* for the appellants.

*Bartlett & A. H. Fiske,* for the appellee.